938 So.2d 1027 (2006)
RESIDENTS OF SHENANDOAH ESTATES SUBDIVISION
v.
GREEN TRAILS, L.L.C., Shenandoah Golf Club, L.L.C., East Baton Rouge Parish Planning Commission, East Baton Rouge Parish Department of Public Works, & Parish of East Baton Rouge.
No. 2005-CA-1331.
Court of Appeal of Louisiana, First Circuit.
June 9, 2006.
Rehearing Denied July 17, 2006.
Charles A. Schutte, Jr., Guglielmo, Marks, Schutte, Terhoeve & Love, Baton Rouge, Counsel for Plaintiffs/Appellants.
*1028 E. Wade Shows, Parish Attorney, Lea Anne Batson, Special Assistant Parish Attorney, Gwendolyn K. Brown, Assistant Parish Attorney, Baton Rouge, Counsel for Defendants/Appellees, City of Baton Rouge/Parish of East Baton Rouge, et al.
Gerald L. Walter, Jr., A. Michael Dufilho, Deborah E. Lamb, Thomas D. Gildersleeve, Taylor, Porter, Brooks & Phillips L.L.P., Baton Rouge, Counsel for Defendant/Appellee, Green Trails, L.L.C.
Hansel M. Harlan, LeClere Law Firm, Baton Rouge, Counsel for Defendant/Appellee, Shenandoah Golf Club, L.L.C.
Panel composed of Ad Hoc Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge Ad Hoc.
Appellants, the Residents of Shenandoah Estates Subdivision, appeal the judgment of the trial court, which held that Appellees, Green Trails, L.L.C., Shenandoah Golf Club, L.L.C., and the City of Baton Rouge/Parish of East Baton Rouge, et al, were not required to seek amendment to the Horizon Plan before submitting their application to the Planning Commission for the Parish of East Baton Rouge (Planning Commission) to subdivide the former Shenandoah Country Club Property into lots for the development of a residential subdivision. We affirm.
FACTS AND PROCEDURAL HISTORY
From around 1970 until February 28, 2005, when the business closed, Shenandoah Country Club was operated as a privately owned, for-profit commercial country club. It has never been owned or operated by Shenandoah Estates Subdivision or its homeowners' association. Restrictive covenants in the deed, which required the property's use as a country club, expired in 1995. The golf course and associated facilities are located on three parcels of land, referred to as SCC-1, SCC-2, and SCC-3. On January 12, 2005, Shenandoah Golf Club sold parcels SCC-1 and SCC-3 to Green Trails, L.L.C., and on the same day granted Green Trails a lease with option to purchase parcel SCC-2.
Following the sale of the property, Green Trails and Shenandoah Golf Club filed an application with the Planning Commission for approval of a preliminary plat to subdivide the SCC property into 282 lots to be used for single family residences.[1] Appellants, owners of some lots in Shenandoah Estates Subdivision (referred to as Residents), filed suit to stop the development, styled as a petition for injunctive relief, declaratory relief, and damages. The Petition further asked for a grant of Writ of Mandamus, requesting that the Planning Commission be forbidden to act upon the application for preliminary plat.
The Residents allege, among other things, that Green Trails and Shenandoah Golf Club were required to obtain from the Planning Commission an amendment to the Horizon Plan[2] before the Planning Commission could act on their application to subdivide the property, because the proposed "land use" category (low density residential) is incompatible with the designated land use category shown on the 2010 Land Use Map (recreational). Defendants, Green Trails and Shenandoah Golf Club, argued that no amendment was necessary *1029 before proceeding to the Planning Commission with the application for preliminary plat, because the zoning does not have to be changed. All parties to the lawsuit filed a Joint Motion by All Parties to Sever For Trial the "Horizon Plan Conflict," with the trial court agreeing to hear the matter on an expedited basis. All parties specifically reserved their rights to all other claims.
Following a hearing held on April 13, 2005, the trial court rendered a final judgment on May 9, 2005, ruling in favor of Appellees, denying the Writ of Mandamus, finding that no amendment to the Horizon Plan was necessary before Appellees could present their preliminary plat application to the Planning Commission. This devolutive appeal followed.
HORIZON PLAN
The Horizon Plan was adopted by the Metropolitan Council on January 7, 1992, and was effective on April 1, 1992.
The Horizon Plan is the 20-year "Comprehensive Land Use and Development Plan" for the City of Baton Rouge and Parish of East Baton Rouge. The plan acts as a "blueprint for the Future" by serving as a guide for officials making decisions about land use and development within the City-Parish. The Horizon Plan's primary emphasis is to identify major issues that will influence future growth, to decide the actions necessary to address these issues, and to propose specific strategies that will help the City-Parish target its resources in the most efficient manner.[3]
Structure of the Horizon Plan[4]
The Horizon Plan is structured into twelve reports: A Horizon Plan Summary; the Horizon Plan Final Plan Report; seven Plan Elements; and three Special Reports. The Horizon Plan Summary provides a brief overview of the Comprehensive Land Use and Development Plan and is made available to the public. The Final Plan Report offers a more concise narrative on the overall Comprehensive Land Use and Development Plan for the future of the City-Parish. The Plan Elements are individual technical reports that address existing conditions and issues. The Elements are further divided into Goals, Objectives, Policies and Action Items.
* * * * *
The seven Elements of the Horizon Plan are: Land Use; Transportation; Wastewater, Solid Waste and Drainage; Conservation and Environmental Resources; Recreation and Open Space; Housing; and Public Services, Public Buildings and Health and Human Services.
The Horizon Plan also contains three Special Reports which describe implementation aspects for specific portions of the Horizon Plan. The Special Reports are: the Capital Finance and Capital Improvements Program, which addresses the financial implementation of the Plan; the Plan Amendment Process, which outlines methods for updating and amending the Horizon Plan; and the Transition Rules, which examines how projects which were in various stages of development during the drafting of the Horizon Plan would be addressed and implemented into the Final Plan.
According to the briefs and evidence, one component of the Horizon Plan is the 2010 Land Use Map, which has been updated periodically in conjunction with the *1030 Horizon Plan's mandate. This map differs from the Zoning Map in that it purports to show the actual "land use" of all the land in the parish (public and private), as opposed to the broader allowed land uses, which is reflected in the Zoning Map. The Shenandoah property is coded "green" on the land use map, which reflects that it is used for recreation.
Plaintiffs argue that the Developers are required to apply to the Planning Commission to amend the Horizon Plan first, before they submit an application for preliminary plat approval to the Planning Commission. First, they argue that such an amendment is required by Section 10.04(b) of the Plan of Government, which states:
(b) LEGAL EFFECT OF MASTER PLAN. Upon adoption of the Master Plan by the Planning Commission and Metropolitan Council, no subdivision, street, park or public way, ground or space, drainage, building development or structure, whether publicly or privately owned which is in conflict with the Master Plan or Zoning Ordinance of the City Parish shall be constructed or authorized by the appropriate department of the City-Parish government, until and unless the locations and extent thereof shall have been submitted to and approved by the Planning Commission and where appropriate, Zoning Commission. In case of disapproval, or approval the commission shall communicate its reasons to the Metropolitan Council, which shall have the power to overrule such disapproval or approval following public hearings, provided that any changes in the Master Land Use Plan shall require a 2/3 vote of the Metropolitan Council and upon such overruling the Metropolitan Council or appropriate office, department or agency shall have the power to proceed, and the Master Plan shall be amended to reflect such change or modification.
All land development regulations including zoning and map, subdivision regulations, roadway plan, and all public improvements, public facilities and all City-Parish regulatory actions relating to land use, subdivision and development approval shall be consistent with the comprehensive plan, element or portion thereof as adopted. For purposes of planning and land development process, the various types of local regulations or laws concerning the development of land may be combined in their totality in a single ordinance known as the Comprehensive Land Use and Development Code for the City of Baton Rouge and Parish of East Baton Rouge.
Plaintiffs argue that the Shenandoah property is restricted to recreational use by the Horizon Plan, and in particular the 2010 Land Use Map component, which becomes useless as a land use planning tool if it does not accurately reflect actual land use and if amendments are not approved according to the process set forth in the Horizon Plan itself. They point out that there are three methods to amend the Horizon Plan, located in Section 19.9 et seq of the Horizon Plan, which specifically apply to people seeking "land use" changes in the 2010 Land Use Map. Plaintiffs point out that requiring defendants to seek amendment to the 2010 Land Use Map may ultimately not defeat their proposed subdivision, but that they are required to apply for this amendment as a first step in the development process, since the proposed subdivision requires a different land use than the one currently designated on the 2010 map.
Defendants advance several arguments against plaintiffs' position. Defendants argue that since the proposed land use, low density residential, is an allowed land use *1031 under the "rural" zoning district, no amendment is necessary. They argue that under the Horizon Plan's "Transition Rules," since the subdivision proposal is in partial conformance with the Horizon Plan, no amendment is necessary. Next, they argue that since the Horizon Plan explicitly included only public lands, not privately held property, in its needs assessment for recreation, no amendment is necessary. They contend that since this property has always been privately owned since even before the development of the Horizon Plan, the property's designation as "recreational" on the 2010 Land Use Map merely reflects this property's historical and actual usage, rather than a restriction on its actual use.
The parties agree that more than one type of "land use" is permitted within zoning districts. For instance, the property in this case is zoned "rural." The 2010 Land Use Map component of the Horizon Plan shows that this property's land use is designated "recreational." Defendants' proposed development would be "low density residential." In East Baton Rouge Parish, a rural zoning district permits several different types of land use, including both recreational and low density residential.
TRANSITION RULES
The transition rules, relied upon by the City Parish attorney, apply by their own terms to "development projects that are either in existence or under review in the period following the adoption of the Horizon Plan." Transition Rules Special Report, P-28 at p. 333. In this case, it is clear that this project did not exist in any stage of development during the drafting of the HP. Green Trails had neither investment-backed expectations nor legally vested rights in this property at the time the Horizon Plan was drafted and later adopted in 1992. The property was burdened with restrictive covenants that did not expire until 1995. Green Trails did not purchase the property until 2005, well after the adoption of the Horizon Plan.
The defendants in this action sought the opinion of the City-Parish attorney on the application of the Transition Rules to this project. The City-Parish attorney felt that the Transition Rules applied to this project, such that an amendment to the Horizon Plan was unnecessary before the developer could apply for a preliminary plat approval. The law plainly requires courts to give great weight to the interpretation given an ordinance by the governing body that had enacted it. A reviewing court should not overturn such a determination unless it is clearly wrong or unless a different construction is clearly required. Kneipp v. City of Shreveport, 550 So.2d 748 (La.App. 2 Cir.1989).
This Court has read the entirety of the Transition Rules Special Report, P-28, and other Horizon Plan components. Though the Horizon Plan states in several places that the Transition Rules were meant to apply to projects that were in various stages of development during the drafting of the Horizon Plan, other language in the Transition Rules creates an ambiguity in how they should be applied. Specifically, on p. 341 of Chapter 4, Horizon Plan Transition Rules, the report states:
Property with existing zoning that is in conflict with the Horizon Plan, will be exempt from conformance with Horizon Plan until the existing zoning is changed or amended, except that if a preliminary subdivision plan or building plan is submitted prior to amendment of the existing zoning, or within two years after the effective date of the Horizon Plan, whichever is later, the exemption will be extended for two additional years to allow time to obtain final approval . . . (emphasis added).
*1032 The "whichever is later" language creates the ambiguity. This phrase appears to include this project, not just those that were in development while the Horizon Plan was drafted. We agree that the City-Parish had a basis upon which to apply the Transition Rules to this project, and this Court cannot say that they were clearly wrong.
Defendants' argument regarding the private nature of the property is also compelling. La Const Art. 1, § 4, states that every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power. The Horizon Plan's Recreational and Open Space Element document clearly and explicitly states, in several places, that privately owned land, even that which was currently and/or historically used as recreational, was not considered in assessing the parish's current or future needs for recreational property. This lends credence to defendants' position that no amendment to the Horizon Plan is required in this case because the "green" designation is not a "restriction" on the use of this private property.
Plaintiffs argue that without amending the Horizon Plan, important issues such as drainage and infrastructure will not be addressed. This Court has reviewed Chapter 4 of the Unified Development Code, which is entitled "Permits and Final Plat Approval." Therein, the procedures for obtaining final plat approval are outlined. A reading of this section makes clear that issues such as drainage and infrastructure are considered as part of the developers' application for a preliminary plat, which is before the Planning Commission at this time.
For the stated reasons we affirm the trial court's denial of the Writ of Mandamus.
AFFIRMED.
NOTES
[1] From the record before us, we cannot determine whether the Planning Commission has yet acted upon the application for a preliminary plat approval.
[2] The Horizon Plan is fully described below.
[3] http://brgov.com/dept/planning/horizon10/
[4] http://brgov.com/dept/planning/horizon 10/