JUDE G. GRAVOIS, Judge.
 

 [■¡The plaintiffs have appealed the trial court’s grant of summary judgment in favor of the defendants. For the reasons that follow, we reverse.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 C’s Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. (“plaintiffs”) purchased an insurance policy covering losses due to property damage and business interruption from Powell Insurance Agency (“Powell”). Powell obtained this policy from an intermediary broker, Midwestern General Brokerage, Inc. d/b/a Westrope & Associates (“Westrope”), and the policy was issued by Pacific Insurance Company, Ltd. (“Pacific”). Plaintiffs submitted a claim to recover for losses suffered due to business interruption following Hurricane Katrina. Pacific refused to pay the full value of the losses claimed by plaintiffs citing a coinsurance provision of the policy. This provision required plaintiffs to obtain 90% of coverage for the value of 12 months of business interruption in order to be fully compensated for losses.
 

 ^Plaintiffs filed suit against Powell, Westrope and Pacific alleging that the business interruption insurance policy in effect at the time plaintiffs suffered losses was not the coverage plaintiffs requested. The defendants denied liability and then separately filed motions for summary judgment. The trial court granted all motions for summary judgment. This appeal involves only the motions for summary judgment granted in favor of Powell and Westrope.
 
 [1]
 

 Powell filed a Motion for Summary Judgment on November 29, 2007 and a second Motion for Summary Judgment on October 21, 2008. In both motions, Powell
 
 *1105
 
 argued that plaintiffs’ claims are perempt-ed under the one year peremptive period set out in LSA-R.S. 9:5606, which provides:
 

 No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue
 
 within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.
 
 However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect. (Emphasis added.)
 

 Powell argued that plaintiffs had a duty to read them policy and know its prolusions. Attached to Powell’s motion were excerpts from the deposition of plaintiffs’ representative, Steven Ciolino, who testified that although he received the policy sometime prior to Hurricane Katrina, which struck on August 29, 2005, he did not read the policy. Powell also attached an affidavit from the agent who obtained the policy, John O’Brien, attesting that a letter informing plaintiffs that the policy should be reviewed “to make sure the coverages have been issued in accordance with your instructions” was enclosed with the policy that was delivered to plaintiffs on May 9, 2005. Powell concludes that the peremp-tive period under pLSA-RS. 9:5606 began to run on May 9, 2005, when plaintiffs knew or should have known that Powell did not procure the insurance that plaintiffs allegedly requested. Powell argues that the suit filed by plaintiffs on August 28, 2006 was perempted, leaving no genuine issues of material fact and entitling Powell to summary judgment.
 

 Westrope filed a Motion for Summary Judgment on September 20, 2008. Wes-trope explained that after being contacted by Powell for assistance in obtaining a quote for coverage for plaintiffs, it forwarded a quote from Pacific to Powell on October 21, 2004. The policy was then secured and covered the period from October 27, 2004 to October 27, 2005. Like Powell, Westrope argued the peremptive period under LSA-R.S. 9:5606 began to run on May 9, 2005 when plaintiff received the policy along with the letter from Powell instructing plaintiffs to review the policy. Westrope reasoned that the policy and accompanying letter gave plaintiffs constructive notice of the alleged defect in the policy, making plaintiffs’ suit untimely.
 

 Plaintiffs filed a memorandum in opposition to the motions filed by Powell and Westrope. Plaintiffs contend that Mr. Ciolino and his company had been customers of Powell for several years prior to 2005. Once a year, Powell’s agent, Mr. O’Brien, contacted Mr. Ciolino to discuss insurance coverage for the coming year. After discussing the insurance needs, the policies were ordered by Mr. O’Brien. Plaintiffs argue that in prior years, plaintiffs’ business interruption policies contained a monthly limit of indemnity which meant that the losses would be paid one-third each month for three months of business interruption coverage. Plaintiffs contend that Mr. O’Brien requested insurance with this same provision for the October 2004-2005 policy. When plaintiffs sought to recover for losses from Hurricane Katrina, it became apparent to plaintiffs and O’Brien that | ¿‘something terrible had gone wrong with the process by which the policies of insurance had been ordered.” The effect of the 90% co-insurance provi
 
 *1106
 
 sion was discussed by Mr. O’Brien and Mr. Ciolino on April 24, 2006. Plaintiffs contend that Mr. Ciolino had relied on O’Brien’s judgment in obtaining insurance and O’Brien failed to point out that the policy in question differed significantly from the policy obtained for the prior years. Plaintiffs contend that there are subjective motives and knowledge in this case and a material issue of fact remains subject to interpretation as to when Mr. Ciolino may have had knowledge, either actual or constructive, of the erroneously issued insurance policy. Plaintiffs conclude that the time period under LSA-R.S. 9:5606 began to run on April 24, 2006, the date Mr. Ciolino became aware of the coinsurance provision in the policy, making the suit filed on August 28, 2006 timely.
 

 In granting the motions finding plaintiffs’ claims were perempted, the trial court found plaintiffs had knowledge of the policy in May 2005, noting that the letter stated Mr. Ciolino had to look through the policy and that the coinsurance provision was on the second page of the declaration sheet.
 

 LAW AND ANALYSIS
 

 Appellate courts review a district court’s grant of summary judgment
 
 de novo,
 
 viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant.
 
 Hines v. Garrett,
 
 2004-0806 (La.6/25/04) 876 So.2d 764, 765. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. In ruling on a motion for summary judgment, the judge’s role is to determine |7whether there is a genuine issue of triable fact with all doubts being resolved in the non-moving party’s favor.
 
 Hines,
 
 876 So.2d at 765.
 

 A material fact is one that potentially insures or prevents recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit.
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512, p. 27 (La.7/5/94), 689 So.2d 730, 751. An issue is a genuine issue if it is such that reasonable persons could disagree; if only one conclusion could be reached by reasonable persons, summary judgment is appropriate as there is no need for trial on that issue.
 
 Id.
 

 An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance.
 
 Karam v. St. Paul Fire & Marine Ins. Co.,
 
 281 So.2d 728, 730 (La.1973). The client may recover from the agent the loss he sustains as a result of the agent’s failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.
 
 Id.
 
 “[E]xclusions or limitations on coverage in a policy should be clearly communicated to the insured at the time of the issuance of the binder.”
 
 Sims v. Ins. Unlimited of West Monroe,
 
 28,234, p. 3 (La.App. 2 Cir. 2/28/96), 669 So.2d 709, 711,
 
 urrit denied,
 
 96-785 (La.5/3/96), 672 So.2d 689. “[T]he insured will otherwise assume the desired coverage exists.”
 
 Id.
 

 As aptly pointed out by Powell in its brief, in
 
 Roadhouse Bar-B-Que v. Certain Underwriters at Lloyds,
 
 909 S.2d 619, at 623, (La.App. 3rd Cir.2005), the Third Circuit accurately sets forth the Louisiana Supreme Court’s interpretation of the commencement of the prescriptive time
 
 *1107
 
 period imposed under LSA-R.S. 9:5606 as follows, to-wit:
 

 | ^Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptivfe period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription.
 

 Because Mr. Ciolino has admitted that he did not read the policy in question when he received it from Powell under cover of letter dated May 9, 2005, it is undisputed that plaintiffs did not have actual knowledge of facts that they were victims of a tort when they received the policy in question from Powell on May 9, 2005. Accordingly, our inquiry in this case is limited to whether or not plaintiffs had constructive knowledge of facts that would indicate to a reasonable person that they were victims of a tort. As such, in accordance with
 
 Roadhouse, supra
 
 with respect to the particular facts and circumstances involved in this case, our inquiry is whether or not the letter Mr. Ciolino received from Powell dated May 9, 2005 is enough to excite attention in Mr. Ciolino and put him on guard and call for inquiry as to whether or not the policy received on May 9, 2005 provided for the business interruption coverage he expected to have.
 

 In his deposition, Mr. Ciolino testified that he had been purchasing insurance for his stores from Mr. O’Brien at Powell since 1987. Sometime during this relationship, Mr. O’Brien suggested Mr. Ciolino obtain business interruption insurance. Mr. Ciolino testified that he and Mr. O’Brien discussed the amount of coverage he required. Mr. Ciolino testified that Mr. O’Brien explained the one-third monthly limit provision of the business interruption coverage that he purchased. Mr. Ciolino testified that under this provision, he purchased a certain dollar amount of insurance and if his business were closed for one month, he |9would recover up to one-third of the limit. If the business were closed for two months, he would recover two-thirds of the limit. If the business was closed for the full three months, he would recover the full amount of the limit. Mr. Ciolino explained that he and Mr. O’Brien discussed the amount of insurance but nothing was mentioned as far as the requirement of co-insurance was concerned. In his deposition, Mr. Ciolino also pointed out that the policy period for this particular policy was October 27, 2004 until October 27, 2005, but the letter from Mr. O’Brien to Mr. Ciolino that allegedly accompanied the policy was dated May 9, 2005. Mr. Ciolino’s deposition references a letter written by Mr. O’Brien to Wes-trope, wherein Mr. O’Brien stated the application signed by Mr. Ciolino requested a policy with one-third monthly limit as had been written for the past ten years. This letter states that there was no request to change the monthly limit to co-insurance.
 

 Accordingly, the issue before us is whether the receipt of the policy nearly seven months after the policy was issued accompanied by a letter that does not point out there was a major change in the business interruption coverage but merely instructs the insured to review the policy, is sufficient to give the insured constructive knowledge that there has been a ma
 
 *1108
 
 jor change in the coverage he has obtained over the past several years. Thus, the question to be answered in this case is not whether plaintiffs could have discovered the change in the coverage, but rather whether plaintiffs should have discovered the change in coverage provision.
 

 The evidence submitted clearly establishes that Mr. Ciolino had a long standing relationship with Powell through its agent Mr. O’Brien and for several years prior to the issuance of the policy at issue, the insurance provided by Powell to plaintiffs included a one-third monthly limitation. The 2004 policy was changed to include a co-insurance provision. Mr. Ciolino testified in his deposition that |innothing was ever mentioned to him by Mr. O’Brien about co-insurance. In fact, based on the evidence submitted, it appears that even Powell’s agent, Mr. O’Brien, was unaware of the co-insurance provision in the policy until after the claims were made on the policy in question following Hurricane Katrina. Although we are mindful of the line of cases imposing a duty upon the insured to read his policy and know its contents, after carefully reviewing the evidence before us, in light of the particular facts and circumstances involved in this case, we conclude that whether or not Mr. Ciolino should have reviewed the policy upon receipt of the cover letter from his agent enclosing his policy and thereupon explicitly discovered the co-insurance provision contained therein is an issue over which reasonable minds could differ. Accordingly, we find there is a genuine issue of material fact as to whether upon receiving the policy and letter, Mr. Ciolino should have discovered the error of Powell and Westrope. For these reasons, we find the trial court erred in granting summary judgment in favor of Powell and Westrope.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Powell and Westrope is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Plaintiffs did not appeal the summary judg-men! rendered in favor of Pacific.