KUHN, J.
12Pefendant-appellant, Baton Rouge Title Company, Inc. (BRT) appeals the trial court’s judgment, awarding damages to Green Trails LLC (Green Trails) for an alleged failure of BRT to report a claim *16 asserted under a title insurance policy issued by Stewart Title Guaranty Company (Stewart Title). For the reasons that follow, we reverse.
FACTUAL AND PROCEDURAL BACKGROUND
In January 2005, Green Trials acquired parcels SCC-1 and SCC-3 and entered into a lease with option to purchase parcel SCC-2 from Shenandoah Golf Club, LLC (SGC). The three parcels (collectively the SCC property) were formerly a golf course and associated facilities. Following the sale of the property, Green Trails and SGC filed an application with the Planning Commission for the Parish of East Baton Rouge (Planning Commission) seeking approval of a preliminary plat to subdivide the SCC property into 282 lots for use as single family residences. In March 2005, multiple owners of lots located in Shenandoah Estates Subdivision filed a lawsuit to stop the Green Trails development (the Residents’ lawsuit).[1] See Residents of Shenandoah Estates Subdivision v. Green Trails, L.L.C., 2005-1381 (La.App. 1st Cir.6/9/06), 938 So.2d 1027, 1028, writ denied, 2006-2098 (La.12/8/06), 943 So.2d 1095.
On December 18, 2006, Green Trails filed this lawsuit against BRT and Stewart Title, averring that BRT had issued to Green Trails, on January 14, 2005, an owners’ title insurance policy on behalf of Stewart Title for the SCC property. IsGreen Trails alleged BRT and Stewart Title were contractually obligated to defend Green Trails in the Residents’ lawsuit that challenged its title; and, having failed to do so, BRT and Stewart Title were liable for reimbursement of the amounts Green Trails had expended in its defense.
Subsequent to answering the lawsuit, BRT filed a peremptory exception, challenging the timeliness of Green Trails’ petition. The trial court overruled the exception, and BRT’s writs to this court, see 2011-0473 (La.App. 1st Cir.4/28/11) (unpublished writ action), and the Louisiana Supreme Court, see 2011-0919 (La.5/11/11), 62 So.3d 130, were denied.
Prior to trial on the merits, Stewart Title settled with Green Trails for $40,000.[2] After testimonial and documentary evidence was adduced, the trial court rendered judgment, concluding that BRT was liable to Green Trails for its litigation costs for the defense of the Residents’ lawsuit. In so concluding, the trial court reasoned that BRT had breached its duty to immediately report and forward to the Stewart Title a claim Green Trails averred it had reported.[3] On June 29, 2011, the trial court issued a judgment in favor of Green Trails in the total amount of $166,909.38 less a credit of $40,000, the amount Stewart Title had paid in settlement. This appeal by BRT followed.
TIMELINESS OF GREEN TRAILS’ CLAIMS
Urging that the undisputed evidence establishes that Green Trails had notice of its claims more than one year before it filed this lawsuit, BRT contends *17 that under 14La. R.S. 9:5605, Green Trails’ claims are perempted. As such, BRT maintains that the trial court’s conclusion overruling its peremptory exception is erroneous.[4]
According to the provisions of La. R.S. 9:5606:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect....
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods ... and ... may not be renounced, interrupted, or suspended.[5]
Under the provisions of La. R.S. 9:5606 D, both the one-year and three-year periods are preemptive. See Huffman v. Goodman, 34,361 (La.App.2d Cir.4/4/01), 784 So.2d 718, 724-25, unit denied, 2001-1331 (La.6/22/01), 794 So.2d 791. Nothing may interfere with the running of a per-emptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable. Biggers v. Allstate Ins. Co., 04-282 (La.App.5th Cir.10/26/04), 886 So.2d 1179, 1181.
If evidence is introduced at the hearing on the peremptory exception, the trial court’s findings of fact are reviewed under the manifest error-clearly wrong standard of review. See Straub v. Richardson, 2011-1689 (La.App.lst Cir.5/2/12),5 92 So.3d 548, 552. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Stobart v. State through Dep’t of Transp. and Dev., 617 So.2d 880, 881-82 (La.1993).
The peremptive period commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he is the victim of a tort. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inqui *18 ry is sufficient to start running of the preemptive period. Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502, 510-511; C’s Discount Pharmacy, Inc. v. Pacific Insurance Co., 09-217 (La.App.5th Cir. 1/26/10), 31 So.3d 1103, 1107.
A review of the evidence establishes the following facts salient to the timeliness issue. Green Trails is a company specifically set up for the development of approximately 300 acres in the old Shenandoah Golf Course. David Waltem-ath, the managing member and majority owner of Green Trails, testified that in January 2004, when he acquired the SCC property, he obtained | fititle insurance through BRT. When he was sued by the Residents of Shenandoah, he had his attorney contact BRT to see if the title insurance policy issued by Stewart covered his claim. According to Waltemath, the Residents’ litigation challenged Green Trails’ ability to develop the land based on alleged zoning and servitude impediments. When Green Trails did not hear back from BRT after the Green Trails attorney initially contacted BRT, Waltemath spoke to BRT’s president, Mark Schoen, and asked him whether Green Trails would be covered under the Stewart Title policy. Schoen advised Waltemath that the title insurance would not cover the zoning issue and promised to get back with Green Trails about whether there would be coverage for the servitude issue.
A Green Trails attorney, whose representation was focused on Green Trails’ attempts to obtain land use approval from various East Baton Rouge Parish governmental entities (the Green Trails attorney), testified that he spoke with Schoen on the telephone on March 2, 2005. In that phone conversation, the Greens Trails attorney advised Schoen that Green Trails had been sued in the Residents’ litigation and told him that Green Trails expected a defense. That same day, the Green Trails attorney emailed Schoen a copy of the Residents’ lawsuit. The March 2, 2005 email requested from BRT maps described in Exhibit 3 to the Residents’ lawsuit as well as specified surveys that were also mentioned in that same exhibit. An email dated March 3, 2005, sent by Schoen to the Green Trails attorney, stated that BRT had obtained copies of the requested maps from the East Baton Rouge Parish Clerk of Court office, and that they were available to be picked up.
17After he did not hear anything from Schoen about the claim he had submitted to BRT on behalf of Green Trails, the Green Trails attorney sent another email to Schoen on March 24, 2005. The email stated that Green Trails had expected to hear from BRT “relative to the claims made in the litigation.” On March 28, 2005, Schoen emailed a response indicating that “the servitudes on Exhibit 3” were all listed as exceptions in the Stewart Title policy and to let him know if Green Trails had any more questions. The Green Trails attorney testified that he understood Schoen’s email to have advised Green Trails that the servitudes were not covered claims under the Stewart Title policy.
Waltemath testified that around March 28, 2005, he talked to Schoen, who advised that there was no coverage for zoning, and the servitudes were exemptions from the policy. According to Waltemath, he expressly asked Schoen if the Stewart Title policy provided coverage to Green Trails, and Schoen stated that it did not.
Thus, as of March 28, 2005, based on BRT’s representations, Green Trails was convinced that there was no coverage under the Stewart Title policy for the claims in the Residents’ litigation. As a result, Green Trails hired attorneys to represent *19 Green Trails in defense of the Residents’ litigation (the Green Trails defense team).
According to Waltemath, sometime during late August or early September 2005, he learned for the first time that Stewart Title was paying for the defense of SGC in the Residents’ litigation. He could not recall the details or the exact date of a conversation with the SGC representative but remembered having been surprised to learn that SGC’s legal fees had been paid by Stewart Title. |sWaltemath said that he added to his “to do” list an inquiry into why Stewart Title was paying SGC’s legal fees but not Green Trails’.
The record also contained a copy of the Residents’ litigation, which shows that the same allegations asserted against Green Trails were also levied against SGC, from whom Green Trails had acquired the property. Thus, it is undisputed that the parties were co-aligned in their defenses to the Residents’ litigation.[6]
Additionally, the record contains an email, dated September 20, 2005, from the Green Trails attorney to Waltemath, which forwarded the March 24, 2005 email to Schoen as well as Schoen’s March 28, 2005 responsive email that indicated the servi-tudes were listed as exceptions to the Stewart Title policy. The Green Trails attorney stated “I think that we should see if we are going to need [BRT’s] assistance ... before raising the issue of the title company paying your defense of the [Residents’ litigation], which should only delay us a few days. But if you want to go ahead and raise it now, I am happy to do so.”[7] Waltemath’s responsive email, dated September 22, 2005, replies, “I agree we should sit tight for a few days.”
Lastly, an email from the Green Trails attorney to the attorney representing SGC dated November 1, 2005, was admitted into evidence. The Green Trails attorney asked that the SGC attorney to contact him regarding the basis for Stewart ^Title’s assumption of a defense on behalf of SGC. The responsive email, which does not contain a date, states that Stewart Title agreed to defend SGC without “any real explanation.”
Although Green Trails maintained that it had requested a defense through verbal and email communications with BRT, both Perry and Waltemath acknowledged that a written notice of claim was not sent to Stewart Title in accordance with the policy provisions until December 16, 2005. According to Waltemath, the first time he learned that BRT had not reported Green Trails’ claim to Stewart Title was on September 8, 2006, when Green Trials received a letter from Stewart Title advising that Schoen denied having received a notice of claim in March 2005.
In overruling the exception of peremption prior to the trial on the merits, the trial court gave no express reasons for its conclusion that Green Trails had timely filed its petition.[8] Without making credi *20 bility determinations contrary to those implicit in the trial court’s conclusion that Green Trails timely filed its claims against BRT, we point out that Waltemath’s un-controverted trial testimony and the documentary evidence establish that Green Trails had constructive notice of its claims against BRT as of late August or early September 2005, when Waltemath learned that Stewart Title was providing a defense to its co-defendant, SGC, in the Residents’ litigation. While the testimonial evidence does not establish a precise date that Wal-temath first learned that his co-aligned co-defendant was provided a defense by Stewart Title, the September 20, 2005 email from the Green Trails |inattorney and Waltemath’s responsive email establishes that as of September 22, 2005, Green Trails knew that Stewart Title’s obligation to pay its defense in the Residents’ litigation was a viable concern. Waltemath even included that concern on his “to do” list. Once Green Trails knew that Stewart Title was providing SGC a defense, Green Trails had sufficient information to excite its attention, put it on guard, and to require it to call for an inquiry as to why Green Trails’ request for a defense in March 2005 had gone unheeded. As such, Green Trails was on notice of everything to which a reasonable inquiry may have led including that BRT had failed to report Green Trails’ claim to Stewart Title.
Moreover, the email from the Green Trails attorney to SGC’s attorney, inquiring of the basis of Stewart Title’s assumption of a defense on behalf of SGC, additionally demonstrates sufficient knowledge as of November 1, 2005, to excite Green Trails’ attention, put it on guard, and to require it to call for an inquiry about its entitlement to a defense under the title insurance policy. Thus, the undisputed evidence establishes that on November 1, 2005, Green Trails was once again on notice of everything to which a reasonable inquiry might have led including that BRT had failed to report its demand for a defense to Stewart Title.
Importantly, we note that the record is devoid of any evidence showing that between late August or early September 2005 and December 16, 2005, when a written notice of claim was sent to Stewart Title on its behalf, that Green Trails contacted either BRT or Stewart Title to ascertain why it had been treated differently from its Residents’ litigation co-defendant, SGC.
Although the record clearly supports the trial court’s implicit finding that September 8, 2006 was the date that Green Trails had actual knowledge of the |nfailure of BRT to report the claim to Stewart Title, Green Trails had constructive knowledge of its claim against BRT as early as late August 2005, and clearly no later than November 1, 2005. A reasonable inquiry would have led Green Trails to discover that BRT had failed to report the claim for a defense to Stewart Title. Thus, the un-controverted testimonial and documentary evidence establishes that Green Trails should have filed its lawsuit against BRT no later than one year from November 1, 2005, the date that Green Trails should have discovered BRT’s alleged omission in failing to report the claim to Stewart Title.[9] Accordingly, Green Trails’ claim, *21 filed on December 18, 2006, was extinguished by peremption under La. R.S. 9:5605.[10] The trial court’s conclusion to the contrary is clearly wrong and, therefore, reversed.
DECREE
For these reasons, Green Trails’ claims were perempted prior to the date it filed its petition. Thus, the trial court’s judgment, awarding reimbursement in the amount of $166,909.38, less a credit of $40,000, is reversed.[11] Appeal costs are assessed against plaintiff-appellant, Green Trails LLC.
REVERSED.

. The Residents' petition sought injunctive, declaratory, and monetary relief as well as issuance of a writ of mandamus directed to the Planning Commission forbidding it to act on the application for a preliminary plat.

. The judgment dismissing Stewart Title from litigation was signed on July 5, 2011, subsequent to the May 12, 2011 trial date. Based on representations to the court, a lack of defense by Stewart Title, and testimonial evidence that the settlement amount was $40,000, it is undisputed that this co-defendant was dismissed from the lawsuit prior to the trial on the merits.

.See La. R.S. 22:523.

. When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to it, in addition to the review of the final judgment. See Landry v. Leonard J. Chabert Med. Ctr., 2002-1559 (La.App.1st Cir.5/14/03), 858 So.2d 454, 461 n. 4, writs denied, 2003-1748, 2003-1752 (La.10/17/03), 855 So.2d 761.

. See La. C.C. arts. 3458 and 3461.

. Indeed, the uncontroverted testimony of an attorney from the Green Trails defense team established that SGC's attorneys took a less aggressive role throughout litigation, including the appellate process, choosing to follow the lead of the Green Trails attorneys’ defense team, even permitting the team to sign all but one pleading on behalf of SGC.

. Testimony established that Green Trails attempted to sell the tennis facilities located on the SCC property to a third party and that in conjunction with that sale, Green Trails anticipated using BRT to place the title insurance for the transaction. Ultimately, BRT was not used for the transaction.

. At the trial on the merits, the trial court refused to permit testimony on the issue of the timeliness of Green Trails’ claim. With the limited exception of some of the testimonial evidence, most of the evidence, including all of the documentary evidence, was admitted into the record at both the hearing on the *20 exception of peremption and the trial on the merits.

. The burden of proof for an exception of peremption is on the exceptor since on the face of its petition, Green Trails averred that it had actual knowledge of BRT’s alleged omission on September 8, 2006, which was well within one year of its December 18, 2006 filing date. See Straub v. Richardson, 2011-1689 (La.App.1st Cir.5/2/12), 92 So.3d 548, 552. In light of the uncontroverted testimony of Waltemath and the email documentary evi *21 dence, we conclude BRT bore its burden of proof and that the trial court erroneously concluded to the contrary.

. Because we have concluded that Green Trails failed to timely report a claim, we pre-termit a discussion on the issue of whether the testimonial and documentary evidence was sufficient to support the trial court’s implicit finding that Green Trails requested a defense.

. Because we have concluded that Green Trails’ petition was untimely, we pretermit a discussion of BRT’s challenges to the trial court’s imposition of liability and the quantum of reimbursement awarded.